SUSANNA LIGHT v. D. W. ZELLER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF LEBANON COUNTY.

Argued February 18, 1889.
Re-argued February 18, 1890—Decided November 11, 1891.

1. If a husband, having the money or property of his wife in his possession, invests it in real estate, and without her consent thereto takes the title to himself, she has a resulting trust in the land which she can assert at any time she sees proper to enforce it, to the extent the property was paid for with her money.*

2. When land is bought by a husband at his wife's instance and with her knowledge and approval, and paid for with her money or property, it is the duty of the husband, without the wife's request, to have the conveyance made to her. Taking the title in his own name is a violation of duty, and a resulting trust will arise in her favor.

3. Declarations of the husband, made at the time the title to land paid for with his wife's money is taken in his name, that he was acquiring the land for his wife, being part of the res gestæ, are admissible in favor of the wife in a subsequent action in the assertion of her equitable title under a resulting trust.

———————

* See Light v. Zeller (2), post, 582.

Statement of Facts.

4. In such an action, evidence given by the husband and wife alone, as
to the use by the husband of the money or property of the wife in the
purchase of the land, is sufficient, if clear, precise and unequivocal, for
submission to the jury against a purchaser of the land at a sheriff's sale
as the property of the husband.

Argued before PAXSON, C. J., GREEN, CLARK, WILLIAMS
and McCOLLUM, JJ.; re-argued before a full Bench.

No. 448 January Term 1887, Sup. Ct.; court below, number
and term not shown.

On June 19, 1885, "Susanna Light and Reuben L. Light,
her husband, for the use of said Susanna Light," brought eject-
ment against Daniel W. Zeller, to recover a lot of ground in
the village of Ebenezer.    Issue.

At the trial, on December 14, 1886, the case presented was
in substance as follows :

Prior to April 6, 1877, Reuben L. Light bought the lot in
controversy from Joseph Meyer, administrator of Sarah Meyer,
deceased, for the sum of one hundred and eighty dollars.    On
the date mentioned, one hundred and fifty dollars were paid
on the purchase money, the vendor signing a receipt to Reuben
L. Light for that amount, the receipt being in Light's hand-
writing.    A house was built on the lot by the plaintiffs in the
summer of 1877.    In February, 1878, on the petition of Joseph
Meyer, administrator of Sarah Meyer, deceased, joined in by
the heirs at law, the Orphans' Court confirmed the sale of said
lot to Reuben L. Light, as a private sale for the payment of
the debts of the said deceased, and a deed was made for the
same to Reuben L. Light, dated March 8, 1878.

From the spring of 1877, when possession of the lot was de-
livered under the foregoing sale, until it was sold as the pro-
perty of Reuben L. Light, as stated infra, the lot was occupied
by Mr. Light and his family, and the buildings on the lot and
on the farm hereafter mentioned were insured in the name of
Reuben L. Light; the taxes thereon also assessed in his name
and paid by him.    On November 1, 1884, upon a judgment
entered July 24, 1884, in favor of John H. Uhler, the property
was sold at sheriff's sale to D. W. Zeller, after notice to the
latter of the claim of title thereto in Susanna Light, hereafter
referred to, the sheriff's deed being acknowledged on Novem-

Statement of Facts.

ber 13, 1884. Subsequently, the purchaser was put into possession by proceedings before a justice of the peace, under §§ 105–112, act of June 16, 1836, P. L. 780, and was in possession when this suit was brought.

To establish a resulting trust in the property in favor of Susanna Light, Reuben L. Light, her husband, testified that in 1871 he was indebted in the sum of about $965 to Jacob Light, the father of Susanna Light, and went to him and offered him a bond for one thousand dollars, held against William Light, the money covered by the bond belonging to the witness ; that his father-in-law gave him credit for the amount of the indebtedness, and said : " I give you that bond that you offered to me for your wife Susan ; give it to her ; I want to give all my daughters $1,200, and $200 I laid by for her ; " that the witness then said he would hold the bond for her, and that he told his wife of this when he went home ; that the money secured by the bond was afterwards paid by William Light, when the witness with the consent of his wife loaned it to Asaph S. Light, on a bond made payable to himself ; that, from the money repaid on this last bond, the witness paid $143 on the lot, with seven dollars which came from a sheep of the wife's sold to one Ulrich and made up the one hundred and fifty dollars first paid ; and that the balance, thirty dollars, was paid by selling two sheep belonging to his wife for twelve dollars, and eighteen dollars came from the proceeds of his wife's farm. Susanna Light testified to the effect that her husband told her, at the time, of the gift of the William Light bond to him for her, and testified, further, that her father in his lifetime had advanced to each of his daughters twelve hundred dollars. She also corroborated her husband as to the manner of payment of the remaining part of the purchase money, and testified that she did not know for some time that the deed for the lot was taken in the name of her husband. Asaph S. Light testified that he thought that when he borrowed the one thousand dollars from the husband, the latter told him the money belonged to his wife.

Evidence adduced as to the title to the farm from the proceeds of which the eighteen dollars came, involved a contention raised in this case, as well as in Light v. Zeller (2), post, 582, to which reference is here made. The farm had belonged to

Charge of Court below.

Jacob L. Light, who died early in 1874. In that year, by proceedings in partition in the Orphans' Court it was allotted to Reuben L. Light, appearing in right of his wife; and in the recognizance for owelty, given by Reuben L. Light and Susanna Light, as principals, Joseph T. Light and Asaph S. Light had become sureties.

Joseph T. Light being called for the plaintiffs, it was proposed to prove by the witness that he was called upon by Reuben L. Light to become the surety on the said recognizance; and that Mr. Light stated that he was taking the farm for his wife; that as the surety for the wife the witness put his name to the recognizance, and that he became such surety with the understanding at the time that the land was taken for her.

Objected to, that the declarations of the wife or husband were incompetent to contradict the record.

By the court: Objection overruled; exception.[1]

A like offer of the testimony of Asaph S. Light, to the same effect, was objected to and objection overruled; exception.[2]

Both witnesses testified in support of the offers.

At the close of the testimony, the court, McPHERSON, J., charged the jury:

It will probably assist you to briefly state, in the order of time, the facts as they have appeared in evidence. There is really very little dispute about any fact in this case; the dispute is about the proper inferences which you are to draw from the facts, in certain directions.

Reuben Light and his wife were married several years before 1874. In 1876, these proceedings in partition upon her father's estate took place. In the course of those proceedings, Reuben Light came forward, in the right of his wife, as the records of the court show, and elected to take at the valuation a certain farm that was afterwards adjudged to him, and he entered into a proper recognizance, as directed by the court, to pay to the other heirs the price due to them upon the valuation. Sometime afterwards, during the next year, as I recollect, or perhaps after that, my recollection is 1877, the administrators filed their account in the estate, and, as I understand, there was a distribution of both the real and personal estate at the same time. It is in evidence that in the course of that distribution

Charge of Court below.

her entire interest in her father's estate was applied to the payment of the valuation money of the farm her husband had taken for her. She got no money for her interest in the rest of the property, but it went into this farm, the title to which, was in her husband. In 1877, the husband made an agreement with the administrator of Mrs. Moyer for the purchase of this lot of ground in Ebenezer. He paid one hundred and fifty dollars at one time, took a receipt in his own name, and afterwards, he says, thirty dollars was also paid in the way detailed in the evidence. A deed was directed to be made by authorized proceedings in the Orphans' Court, and it was made to him in accordance with those proceedings. A house was put upon this lot, and paid for in April, 1878; I think that was the date when the last payment was made. The last payment [on the house erected] was made by the Reinoehl & Meily note. Several years afterwards a judgment was obtained, upon which an execution was issued, and this property was sold to Daniel W. Zeller, the defendant in this case. A deed was made to him, and he subsequently went into possession.

Now, you will see at once, if there were nothing to attack the deed made to Reuben Light for this lot of ground in Ebenezer, there would be nothing for you to do; the case would be entirely plain, and your verdict would necessarily have to be for Daniel W. Zeller. If the legal title to this property was in Reuben Light, whatever interest he had in it passed to Daniel W. Zeller, and there could be no doubt as to what your verdict should be. The wife, however, says that she paid for the property, or that her money paid for it; that the equitable title is in her; that, notwithstanding the fact that Zeller bought it as the property of her husband, she is the real owner. If that be true, it can be set up in this case. Zeller is simply a judgment creditor; he has the right of a judgment creditor, and that right is no greater than the right of the debtor. Zeller's right, in other words, is no greater in this case than the right of Reuben Light, as against his wife. That is, indeed, not denied upon either side of the case. [So we come at once to the real question in this case: Was this property paid for by the wife's separate estate? If so, she would have what the law calls a resulting trust in the property as against her husband. That is, a trust would result to her, arising

Charge of Court below.  .

from the fact that she furnished the money to buy it; and, if her husband took the title in his own name, nevertheless he would simply hold the legal title for her benefit, and at any time she saw proper to enforce it, she could do so.] [3]

When a wife claims property as against her husband's creditors, she must establish what the law declares to be necessary. The burden of proof is upon her.  She must show that the property which she claims was purchased with her own separate estate.  She must show it by evidence which is clear, and so full and satisfactory that a jury can rely upon it with reasonable certainty.  If she fails to show it by evidence having the qualities I have just spoken of, then she fails entirely, and it is the duty of the jury to find against her claim.  She takes upon herself, I repeat, the burden of making out this case, this claim against her husband's creditor; she assumes the burden of proof, and she must prove it by evidence, which must be clear; it must be full, and must be so satisfactory that a jury can rely upon it with reasonable certainty.  If she fails in any of these particulars, it is the duty of the jury to disregard the claim; the rights of creditors demand it.  If she comes up to this requirement, the rights of the wife demand that her claim shall prevail.

Therefore, the first question for you to determine is whether her money paid for this property, and whether her property was in part applied to it.  It was paid part in cash and part by the giving of sheep—I don't remember any other articles— but, at all events, sheep and money.  You have heard all the evidence upon the subject, and you must determine whether the money that was applied was her separate money, and whether the sheep which were applied also belonged to her separate estate.  [As far as the money that went into the house is concerned, I do not think you need trouble about that at all.  This controversy will determine who ought to have the title to the lot.  Therefore, I say you need not consider the question as to whose money went into the house.  If her money paid for the lot, she would have a resulting trust in it as against her husband's creditors, and that would carry with it the house.] [4]

A considerable portion of the money that was applied to the payment of the lot, if you believe the evidence, came from

Charge of Court below.

money which was in the hands of Asaph S. Light, was loaned to him by the husband, and a bond for it taken in the name of the husband. You have heard the testimony upon that point, and you must determine whether that money was really the husband's, or whether it was really the wife's. If it was the husband's money, then it was of course his money that went to the payment of this lot, and you will so find. On the other hand, if this bond which was taken for money loaned to Asaph S. Light belonged to the wife, belonged to her separate estate, the jury would so determine. I do not recollect that money from any other source was paid upon this lot. The remainder of the purchase money, as my recollection goes, was made up by giving certain sheep. Whether or not these sheep came to this woman directly from home, or were the increase of sheep which she got in that way direct from her home, or whether they were purchased with the proceeds of this farm that has been spoken of, is a question for the jury to determine. If they came direct to her from her father's home, or if they were the increase of such sheep as she got at the time she married and came to her husband—you recollect it was testified that she brought certain animals with her to the farm—in that case they would be her separate property. If they were purchased with the income of the farm which her husband took at the valuation, then of course whether they were or were not her separate property would depend upon what interest, if any, she had in the farm. If the farm was his, although she may have assisted him and paid a good deal of money upon it for him, still the products would be his, and the income of the farm would be his and not hers. That is a question bearing upon the dispute which you have noticed in the case about the ownership of this farm. That is one of the sources from which the plaintiff claims that she got part of the money to pay for this lot.

Upon the other hand, it is said that it wasn't hers at all, but belonged to her husband, and that all the evidence is against her claim. The records show that the husband took the property in his own name, and that it was adjudged to him, and the legal title passed to him. [Therefore, whether or not she had any real interest or ownership in the property, depends, in my judgment, upon how you will determine the evidence with re-

Charge of Court below.

gard to certain other matters. It is alleged that although he took the property in his own name, the agreement between himself and wife, before the partition proceedings came to that point, was that he should take it for her; that she supposed he was taking it for her, and that in pursuance of that agreement she afterwards furnished a considerable portion of the money that went to pay for it; and the conclusion is urged upon you that under that state of circumstances, although the legal title was in him, nevertheless he was holding it in trust for his wife. If you find the facts to be as we have outlined them to you, we think that conclusion is sound, and that she would have an interest in the property.] [5]

Upon the other hand, you must give proper weight, and considerable weight to the papers in this case. They cannot be overcome except by evidence which must be clear, full and indisputable. Such proof is against the face of the papers; and, while it is permitted, it cannot be made except by evidence which has those high qualities. If the jury find that the papers are not disproved by such evidence, they must stand by the record and must determine from that who has the ownership to the property. Those are the questions in the case. The jury must determine them, and as they determine them their verdict will be made.

[If the jury find that the wife's property—without repeating what I have said before—if the jury find that the wife's property, or part of it, paid for this lot in Ebenezer, then that was hers as against her husband; and therefore, as against the defendant, she would have a resulting trust in the property, which would be sufficient to entitle her to recover in this case.] [6] Upon the other hand, if the property was paid for by her husband, the defendant would be entitled to a verdict. The burden of proof is upon the wife to show her claim by evidence that will be at once so clear, and so full and satisfactory that the jury can rely upon it with reasonable certainty.

The plaintiffs request the court to charge the jury:

1. The property which a married woman acquires during coverture, by inheritance or gift from any other person than her husband, belongs to her, and she does not lose title to it if it comes into the possession of her husband. If it consists of money, bonds, or personal property, and he invests it in real es-

Charge of Court below.

tate and takes the title to himself, without her consent, she has a resulting trust in the property, and can successfully assert her title thereto, to the extent that it has been paid for with her money, against the creditors of the husband.

Answer: This is affirmed, so far as concerns the judgment creditors of her husband. We have nothing to do with any other sort of creditors just now.[7]

6. If the jury believe, from all the evidence, that the lot in controversy, which cost but $180, was bought at the wife's instance and with her knowledge and approval, and paid for with her money or her property, it became the duty of the husband, and she had a right to expect without being thereunto requested, that he would have the conveyance made to her; taking title to himself was a gross breach of trust, and the wife has a resulting trust in the property which will avail her in this action.

Answer: This is affirmed in substance. Under the facts supposed, she would have a resulting trust which she could set up in this action. We further modify the language, "a gross breach of trust," so as to read "a violation of his duty." We think the former a little too strong.[8]

9. This contention only involves the title to the lot. If that was paid for with the money and property, or either, of Susanna Light, she is entitled to recover in this action, and it makes no difference how the house erected upon it was paid for.

Answer: Affirmed; it being undisputed that the house was built and paid for a considerable time before the debt was contracted upon which the property was sold, and before defendant's debt was contracted.[9]

The defendant requests the court to charge the jury:

1. That the declarations of the debtor are not evidence to impeach the title of the sheriff's vendee; and especially is this the law against debtors who claim the land for the wife.

Answer: This is refused. The declarations referred to, of Reuben Light, do not affect the title of the sheriff's vendee, but bear only upon the question whether Reuben was his wife's trustee of the farm, the title to which is not in issue.[10]

4. That where property, real or personal, is claimed by a married woman against the creditors of her husband, the burden is upon her to prove by evidence clear and unequivocal that she owned the same at the time of her marriage, or ac-

Arguments.

quired it afterwards by gift, bequest or purchase, and that the funds for such purchase were not furnished by her husband.

Answer: She must prove the fact stated by evidence at once clear and so full and satisfactory that the jury can rely upon it with reasonable certainty.[11]

5. That, in this case, all the evidence presented by the receipt and the deed show the legal title in the said Reuben Light, and there being no allegation of fraud or proof of fraud, or proof of fraud in the husband having the title made to himself, the plaintiff cannot recover.

Answer: Refused. The question is not one of actual fraud, but of a resulting trust.[12]

—The jury returned a verdict in favor of the plaintiffs, for the lot of ground in dispute. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1, 2. The admission of the plaintiffs' offers.[1,2]

3–6. The portions of the charge embraced in [ ] [3 to 6]

7–9. The answers to the plaintiffs' points.[7 to 9]

10–12. The answers to the defendant's points.[10 to 12]

*Mr. W. M. Derr* (with him *Mr. W. D. Fisher*), for the appellant.

Counsel cited, upon the admission of the plaintiffs' offers: Musser v. Gardner, 66 Pa. 242; Grabill v. Moyer, 45 Pa. 530; Kline's App., 39 Pa. 463; Bigley v. Jones, 114 Pa. 510; Kisler v. Kisler, 2 W. 323; Barnet v. Dougherty, 32 Pa. 372. Upon the remaining assignments: Cowden v. Oyster, 50 Pa. 368; Boynton v. Winslow, 37 Pa. 315; Brawdy v. Brawdy, 7 Pa. 157.

*Mr. Josiah Funck* (with him *Mr. J. M. Funck* and *Mr. A. Stanley Ulrich*), for the appellees.

As to the admission of plaintiffs' offers, counsel cited: Williard v. Williard, 56 Pa. 119; Sill v. Swackhammer, 103 Pa. 13. As to resulting trusts: Bigley v. Jones, 114 Pa. 510; Fillman v. Divers, 31 Pa. 432; Farrell v. Lloyd, 69 Pa. 239; Story's Eq. J., 6th ed., §§ 1200, 1258; Sheetz v. Marks, 2 Pears. 302; Cross's App., 97 Pa. 474; McLaughlin v. Fulton, 104 Pa. 161.

Opinion of the Court.

On April 9, 1889, the judgment in the foregoing case was reversed with a venire de novo, opinion by Mr. Chief Justice PAXSON.* Afterwards, on motion, a re-argument was ordered.

*Mr. Derr* and *Mr. Fisher,* for the appellant.

As to the sufficiency of the evidence to establish a resulting trust, counsel cited : Sower v. Weaver,† 78 Pa. 443 ; Erie R. Co. v. Knowles, 117 Pa. 77, 82 ; Bitner v. Boone, 128 Pa. 567 ; Lehman v. Lewis, 62 Ala. 133 ; Whitmore v. Learned, 70 Me. 276 ; Thomas v. Loose, 114 Pa. 35, 46 ; Brawdy v. Brawdy, 7 Pa. 157 ; Strimpfler v. Roberts, 18 Pa. 283 ; Todd v. Campbell, 32 Pa. 250, 252 ; Nicolls v. McDonald, 101 Pa. 514 ; Null v. Fries, 110 Pa. 521 ; Phillips v. Meily, 106 Pa. 536 ; English's App., 119 Pa. 533, 540 ; Church v. Ruland, 64 Pa. 432.

*Mr. Funck* and *Mr. Ulrich,* for the appellees.

That the testimony was sufficient to establish a resulting trust, counsel cited : Sackett v. Spencer, 65 Pa. 89, 100 ; Bavington v. Clarke, 2 P. & W. 115 ; Bigley v. Jones, 114 Pa. 510 ; Harrold v. Lane, 53 Pa. 268 ; Murphy v. Hubert, 16 Pa. 50 ; Harrisburg Bank v. Tyler, 3 W. & S. 373 ; Houser v. Lamont, 55 Pa. 311, 317 ; Pierce v. McKeehan, 3 Pa. 136, 139 ; Perry on Trusts, 1st ed., §§ 77, 86 ; Beck v. Graybill, 28 Pa. 66 ; Lynch v. Cox, 23 Pa. 268 ; McLaughlin v. Fulton, 104 Pa. 161, 165, 169 ; Heath v. Slocum, 115 Pa. 549.

OPINION, MR. JUSTICE STERRETT :

Some of the most important questions presented by this record have been disposed of in favor of defendants in error by the affirmance of the judgment in Light v. Zeller, post, 582. By reference to the opinion just filed in that case, it will be seen that the judgment of affirmance is confirmatory of Mrs. Light's claim of title, to which the evidence referred to in the first and second specifications and that part of the charge recited in the fifth specification, respectively, relate ; and it will be quite apparent, also, that plaintiff in error was not prejudiced, either by the introduction of the evidence or by the charge com-

---

* The opinion is printed in 29 W. N. 64, but, being withdrawn by the order for a re-argument, the reporter is instructed not to report it officially.

† See Yost v. Mensch, 141 Pa. 73.

plained of. Independently of the affirmance of that judgment, we think there was no error in admitting the evidence referred to in the first and second specifications, or in charging the jury as recited in the fifth. The first, second, and fifth specifications are therefore not sustained.

The subjects of complaint in the third, fourth, and sixth specifications, inclusive, are portions of the learned judge's charge recited therein, respectively. In the first of these, the controlling question in the case was very distinctly presented, as follows : " So we come at once to the real question in this case : Was this property paid for by the wife's separate estate ? If so, she would have what the law calls a resulting trust in the property as against her husband. That is, a trust would result to her, arising from the fact that she furnished the money to buy it; and, if her husband took the title in his own name, nevertheless he would simply hold the legal title for her benefit, and at any time she saw proper to enforce it, she could do so." In view of the evidence before the jury, that was clearly a question of fact for them. It was rightly submitted, under proper instructions contained in the general charge, including the portions thereof that are assigned for error; and their finding in favor of Mrs. Light was conclusive of her right to recover.

The seventh to ninth specifications, inclusive, are to the affirmance of points submitted by the plaintiffs below. The remaining specifications are to the answers of the learned judge to points submitted by the defendant below. A careful examination of these specifications, in which the points referred to, as well as the answers of the court thereto, are respectively recited, has failed to convince us that there is any error in in either of them. On the contrary, we are satisfied that the case was ably and correctly tried ; and there was abundant evidence to warrant the jury in finding as they did.

Judgment affirmed.